UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
                        :

NANCY MARRERO,                   :

                        :       09 Civ. 4689 (SHS)

                        :

           Plaintiff,       :

                        :       OPINION & ORDER

                        :

        -against-         :

                        :

                        :

MICHAEL J. ASTRUE,         :

COMISSIONER OF SOCIAL SECURITY,   :

                   Defendant.   :

                        :

------------------------------------------------------------------x

SIDNEY H. STEIN, U.S. District Judge.

     *Pro se* plaintiff Nancy Marrero brings this action pursuant to section 205(g) of the Social

Security Act, 42 U.S.C. § 405(g), to challenge a final determination of the Commissioner of

Social Security denying Marrero Supplementary Security Income.  The Commissioner has

moved for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c).  Because the

Commissioner's  determination was free of legal error and supported by substantial evidence,

that motion is granted.

**I.  BACKGROUND**

          A.    <u>Procedural History</u>

     On June 14, 2006, Nancy Marrero ("Marrero") applied for Supplemental Security Income

("SSI") alleging that she is disabled.  (R. at 37.)[1]  During her intake interview with the Social

Security Administration ("SSA"), Marrero stated that she is limited in her ability to work

because she suffers from depression, anxiety, and pain.  (R. at 65.)  On January 10, 2007, the

---

[1] "R. at ___" refers to the administrative record filed by the Commissioner as part of his answer to the complaint.

SSA denied Marrero's application for SSI because Marrero's condition "is not severe enough to keep [her] from working."  (R. at 41.)  The following month, Marrero requested an administrative hearing.  (R. at 42.)  Administrative Law Judge Kenneth G. Levin (the "ALJ") conducted that hearing on July 31, 2007 to determine if Marrero were entitled to SSI payments. (R. at 409-41.)  During the hearing, Betty Heaton, a paralegal with Manhattan Legal Services, represented Marrero.  (R. at 21, 36.)  Approximately one month later, the ALJ determined that Marrero was not disabled and was not eligible for SSI.  (R. at 26.)

The decision of the ALJ became the final decision of the Commissioner when, on March 17, 2009, the Appeals Council denied Marrero's request for review.  (R. at 3-6.)  Two months later, Marrero commenced this action for judicial review of the Commissioner's decision; she claims that the decision was "erroneous, not supported by substantial evidence on the record, and/or contrary to the law."  (Compl. ¶ 9.)

     B.   <u>Factual Background</u>

     1.   *Non-Medical History*

Marrero was born in the Dominican Republic in 1969 and immigrated to the United States in 1990.  (R. at 415.)  She is currently a legal resident.  (<u>Id.</u>)  Marrero has an eighth grade education and is literate in Spanish, but she does not speak or understand English.  (R. at 64-65, 69.)  Marrero lives in an apartment with her ten-year-old daughter and sixteen-year-old son.  (R. at 74, 423-24.)

     a.   Plaintiff's Testimony

During the July 31, 2007 administrative hearing, Marrero testified that she stopped working in 2006 because she "was depressed."  (R. at 416.)  She elaborated that her depression made her "feel very sad" and made her "body hurt[] a lot."  (R. at 420.)  Marrero testified that

when she feels depressed she lies down and stays "lying down all the time." (Id.) In addition, Marrero testified that she gets "very anxious" and has trouble sleeping because she feels "restless." (R. at 420-21.) To address her difficulties sleeping, Marrero was prescribed Ambien, (R. at 421), but Ambien affects her ability to concentrate the next day: "I could do what I have to do at home, but my mind doesn't concentrate, I can't learn anything," (R. at 422).

During questioning by Heaton,the paralegal representing her, Marrero noted that her "back pain" also makes her lie down all day. (R. at 416.) Even though Marrero said, "I don't have any physical problems," after further questioning by Heaton, Marrero testified that she felt pain in "[b]oth my shoulders," and that her doctors had sent her to "physical therapy." (R. at 419.) Although Marrero's pain and depression require her to lay down "all the time," (R. at 420), Marrero also testified that she attends church sometimes, she uses the subway, she stretches as exercise, she visits with her friend or her sister, and she performs the household chores, including the cooking, cleaning, and shopping, (R. at 424-26.)

Before Marrero stopped working in 2006, she performed a variety of jobs. (R. at 416-18.) When she first arrived in the United States, Marrero worked in a factory for four months. (R. at 418.) In 2002 or 2003, she worked as a catalogue saleswoman, selling "pictures, candles, stuff, [and] decorations for houses" to friends and family. (R. at 417-18.) Most recently, in 2005, Marrero worked as a "home attendant" for six months, (R. at 417), and in 2006, she worked as a babysitter for a "short while," (R. at 16).

b.    Vocational Expert's Testimony

Dr. Steven Feinstein, a licensed psychologist and "[v]ocational [r]ehabilitation [c]ounselor," (R. at 357-58), testified as a vocational expert during the hearing, (R. at 436). The ALJ asked Dr. Feinstein to "identify jobs at the sedentary and lift levels" that a hypothetical

individual could perform, if that individual is Marrero's "age," has Marrero's "education and prior work experience," and is "limited to jobs that are simple, routine and low in stress and require only low levels of concentration." (Id.) Dr. Feinstein stated that such an individual could work as a sewing machine operator (21,900 jobs available locally, 233,000 available nationally), a light-level assembler (29,000 jobs available locally, 1,242,000 jobs available nationally), a sedentary assembler (7,500 jobs available locally and 240,000 jobs available nationally), a light-level packager (4,500 jobs available locally, 140,000 jobs available nationally), or a sedentary packager (8,500 jobs available locally and 210,000 jobs available nationally). (Id.) Dr. Feinstein also clarified, in response to the ALJ's questioning, that these jobs would not require "significant overhead reaching." (Id.)

2. *Mental Health*

a. Treating Sources

Beginning in 2000, Marrero received "treatment for depression" at Metropolitan Hospital. (R. at 229.) She "had psychiatric consultations once a month," and was prescribed Celexa and Ambien. (Id.) In late 2005, Marrero stopped taking her medication because "she felt that she needed to talk more than anything else." (Id.) Marrero requested an interview with Metropolitan Center for Mental Health ("MCMH"), (id.), and on May 3, 2006, Marrero began individual therapy with Ixora Salazar, a "social worker therapist" at MCMH, (R. at 23, 250, 393). Marrero met with Salazar at least once a month and often multiple times each month, from May 2006 to May 2007. (R. at 250-67, 270, 273, 275, 280, 283-85, 291-95.) In therapy sessions, Salazar noted that Marrero suffered from depression, anxiety, and "sleep disturbances." (R. at 250, 259, 265, 282.) During this period of therapy, between April 2006 and April 2007, nurse practitioner Carol Deutsch prescribed Marrero a variety of medications, including Celexa,

Remeron, Klonopin, Prozac, Seroquel, and Lexapro.  (R. at 249, 256, 269, 272, 279, 282, 287, 290, 297.)

On May 5, 2006, two days after she began therapy with Salazar, Marrero checked into the emergency room, stating that she felt "depressed" and "suicidal."  (R. at 195.)  Marrero was treated and released that same day.  (R. at 194.)  On August 15, 2006, Marrero again went to the emergency room.  (R. at 199-204.)  Marrero stated that she felt "very nervous" and that she had been unable to sleep for three weeks.  (R. at 199.)  Marrero met with a psychiatrist and was again discharged the same day.  (R. at 205.)  Although Salazar noted that Marrero felt better in certain therapy appointments, (R. 252, 257, 270, 285, 291), throughout therapy, Salazar noted that Marrero's depression, nervousness, and "sleep disturbances" persisted, (R. at 254, 259, 261, 273, 275, 280, 283, 295).

On May 30, 2007, Dr. Michael Cohen, a psychiatrist at MCMH, signed a Psychiatric Report and an "Assessment of Functional Limitations Resulting From a Mental/Intellectual Impairment" ("Limitations Form") to aid the SSA's analysis of Marrero's eligibility for SSI.[2] (R. at 382-95.)  The Psychiatric Report concluded that Marrero has a "history of severe depression," that she has "severe memory and concentration problems," that her psychiatric condition would "exacerbate [her] experience of pain," and that her "general functioning is severely affected by her emotional condition."   (R. at 382-88.)  Moreover, the Psychiatric Report concluded that Marrero was extremely limited in her ability to "concentrate" and to "complete tasks in a timely manner," (R. at 385), and that Marrero showed a "marked" limitation in her ability to remember instructions, to respond to work pressures, or to complete simple

---

[2] Although Dr. Cohen's signature is affixed to both reports, (R. at 388, 392), he did not complete the forms and he never met with Marrero, (R. at 412-15).  Salazar filled out these forms.  (Id.)  Accordingly, for purposes of this opinion, any reference to Dr. Cohen's conclusions are actually attributable to Salazar, the social worker who treated Marrero.

tasks, (R. at 387).  According to the Psychiatric Report, Marrero's condition had persisted and could be expected to persist for at least twelve months.  (R. at 384.)

The Limitations Form informs the SSA about "the [claimant's] ability to do activities on a daily and sustained basis."  (R. at 389.)  Similar to the Psychiatric Report, the Limitations Form concluded that Marrero's emotional condition "severely affected" her general functioning and cognitive capacities.  (R. at 389, 390.)  The Limitations Form also noted that Marrero exhibited marked impairments in her social functioning and in her ability to concentrate.  (Id.)  According to the Limitations Form, Marrero "exhibited or would be expected to exhibit either continuous or intermittent difficulty" in several abilities, including her ability to hold a job, to "cooperate with coworker[s]," to "remember[] work-like procedures," and to "carry[] out very short and simply instructions."  (R. at 391.)

### b.   Consulting Psychiatrists

Dr. Mariano Apacible, (R 211-13), and Dr. Herbert Meadow, (R. at 208-10), served as consulting psychiatrists.  On January 4, 2007, Dr. Apacible reviewed Marrero's records and completed a psychiatric review and a "Mental Residual Functional Capacity Assessment."  (R. at 211-23, 224.)  Although Dr. Apacible concluded that Marrero had an "adjustment disorder with depressed mood," (R. at 215), Dr. Apacible found that Marrero's condition was not sufficiently severe to meet or equal a "listing" impairment, and that an assessment of Marrero's Residual Functional Capacity ("RFC") was necessary, (R. at 212).[3]  Dr. Apacible noted that Marrero showed "moderate" difficulty "in [m]aintaining [c]oncentration, [p]ersistence or [p]ace," but

---

[3] A listing impairment is an impairment that is included in Appendix 1 of the SSA regulations.  See 20 C.F.R. § 404.1520(d).  If an impairment is listed, then a claimant is disabled and eligible for SSI.  See id.  The SSA will not analyze an individual's RFC or "age, education, or work experience."  Id.  The SSA regulations also provide that if an impairment is not listed but is equal to a listing impairment, then the claimant is disabled and no further analysis is required.  Id.  For the purposes of this opinion, references made to impairments that automatically qualify a claimant for SSI will be referred to as "listing-level impairments."

noted that Marrero showed no limitation in her daily activities or social functioning.  (R. at 222.)

Finally, Dr. Apacible assessed Marrero's RFC.  (R. at 224.)  Dr. Apacible determined that

Marrero was "moderately limited" in some capacities required for work, but her condition did

not make her "markedly limited" in the capacities required for an individual to "sustain []

activity over a normal workday and workweek, on an ongoing basis."  (Id.)

On September 25, 2006, Dr. Meadow completed a Psychiatric Evaluation after he

examined Marrero.  (R. at 208-10.)  Dr. Meadow noted that Marrero described herself as "being

depressed, having difficulty concentrating, crying frequently, and getting irritated easily."  (R. at

208).  However, during his examination, Dr. Meadow noted that Marrero generally appeared

"cooperative," "coherent," and "oriented."  (Id.)  Dr. Meadow also noted that Marrero's "mood

was depressed," and that her "[i]ntelligence level is judged to be in the low average range."  (R.

at 208-09.)  Dr. Meadow concluded that although Marrero had a "psychiatric disorder, it would

not necessarily interfere with her ability to function."  (R. at 209.)

### c.      Testifying Psychiatric Expert

Dr. Joseph G. Vitolo, a psychiatrist, testified as an expert witness before the ALJ during

the July 2007 hearing.  (R. at 430-36.)  Dr. Vitolo concluded, after reviewing the "evidence in

the case," that Marrero's impairment "is a medically determinable impairment" that is "severe."

(R. at 430.)  Dr. Vitolo specified that Marrero's disorder is a "major depressive disorder with

anxiety features and somatic features."  (Id.)  Despite the somatic features, however, Dr. Vitolo

stated that "[he] didn't think there was enough information to establish an independent medically

determinable impairment of somatoform disorder."  (R. at 431.)  Even though Dr. Vitolo noted

that the conclusions of Dr. Cohen's Psychiatric Report supported a finding that Marrero's

condition constituted a listing-level impairment, (R. at 432, 434), Dr. Vitolo did not believe that

those conclusions were "supported by any evidence provided by the same institution [and] by the people that treated [Marrero]," (R. at 434). Dr. Vitolo opined that Marrero is only "mildly limited" in her social functioning and her ability to concentrate. (R. at 430.) Dr. Vitolo concluded that Marrero's condition was not sufficiently severe to constitute a listing-level impairment. (Id.)

2.   *Physical Health*

a.   Treating Sources

Dr. Kirti Shah, of Segundo Ruiz Belvis Diagnostic and Treatment ("Belvis Diagnostic"), treated Marrero throughout 2006 and 2007. (R. at 91, 98, 104, 118, 123, 318, 324, 339.) Over the course of Marrero's treatment, Dr. Shah diagnosed Marrero with anemia, gastritis, hyperlidipedmia, and chronic dyspepsia. (R. at 90-91, 111, 324-25, 339.) On August 14, 2006, Marrero visited Dr. Shah complaining of "acute anxiety, nervousness, [and] insomnia." (R. at 104.) Marrero had visited the emergency room earlier that day, and Dr. Shah referred Marrero to the "psychiatric emergency department." (Id.) Marrero was later discharged "without services" by Dr. Gonzalez, a psychiatrist, because Marrero "stated that she feels safe to return home [on] her own." (R. at 105.)

On December 11, 2006, Marrero visited Dr. Shah because she wanted a referral to physical therapy to help alleviate her "pain [in the] cervical area." (R. at 115.) Dr. Shah referred Marrero to physical therapy, (R. at 116), but in an appointment with Dr. Shah on February 22, 2007, Marrero continued to complain of back pain, (R. at 118). During that appointment, Dr. Shah also noted that Marrero was anxious. (Id.) Dr. Shah adjusted Marrero's medication and referred her to a psychiatrist. (R. at 119.) During a follow-up examination on May 25, 2007, Marrero stated that she felt "a lot better," and was not experiencing any "symptoms." (R. at

120.)  However, in early June of 2007, Marrero complained of a continuing backache and stated that she did not want "any more physiotherapy."  (R. at 123.)  During this appointment, Dr. Shah indicated that Marrero's symptoms were "consistent with straightening of spine due to muscle spasm."  (R. at 123.)  In Marrero's follow-up visits on June 21 and 26, 2007, Marrero noted that she felt "better."  (R. at 125, 128.)

On July 13, 2007, Dr. Shah completed a Medical Report for the SSA.  (R. at 372.)  Dr. Shah diagnosed Marrero with chronic non-specific backaches, chronic muscle pains of unknown etiology, depression, and anxiety.  (R. at 372-75.)  Dr. Shah noted that Marrero had "improved" since her June 26, 2007 visit.[4]   (R. at 372, 375.)

On September 15, 2006, Marrero was referred to Metropolitan Health Center ("MHC") for rehabilitation because of "neck pain."  (R. at 301.)  During two visits to rehabilitation, the physician noted Marrero's pain in her back and "mild tenderness" in her neck.  (R. at 301, 307.)  On January 17, 2007, Marrero was diagnosed with "Myofacial Pain Syndrome."  (R. at 304.)  Six months later, the physician noted that "the patient reports improvement of pain with therapy," even though Marrero still felt "mild" pain.  (R. at 312.)

Dr. Rodica Alexandrescu, a physician at MHC, treated Marrero from September 15, 2006 until May 31, 2007, (R. at 367), and on May 31, 2007, Dr. Alexandrescu also completed a Medical Report for the SSA, (R. at 367, 371).  Dr. Alexandrescu  diagnosed Marrero with "upper back pain," "myofacial pain syndrome," "depression," and "anxiety."  (R. at 367.)  Although Dr. Alexandrescu noted concern about possible limitations from Marrero's psychological condition, Dr. Alexandrescu concluded that Marrero was not limited from a "rehab[ilitation] point of view." (R. at 371.)

---

[4] Marrero also indicated that she felt "mild discomfort in both breast[s]" during the June 26, 2007 appointment.  (R. at 128.)  Dr. Shah noted this pain on his SSA Medical Report, and he also noted that Marrero had improved since the June 26, 2007 appointment.  (R. at 375.)

Dr. Alexandrescu reported that Marrero could sit and stand "for up to two hours continuously," could lift six to ten pounds continuously, and could carry eleven to twenty pounds continuously.  (R. at 369.)   Marrero was also able to "bend, squat, climb, [and] reach."  (Id.)  Further, Dr. Alexandrescu reported that Marrero was not limited in the repetitive use of her hands or in the repetitive use of her legs and feet.  (R. at 370.)  Although Marrero's "psychiatric medication" might limit her ability to drive, Marrero could take the bus or subway to work.  (R. at 370-71.)  Dr. Alexandrescu also reported that Marrero's condition had not lasted and would not be expected to last "at least twelve months."  (R. at 367.)   In Dr. Alexandrescu's opinion, Marrero was not physically limited, although Dr. Alexandrescu did "[s]uggest [a] [p]sychiatric disability eval[uation]."  (R. at 370-71.)

> b.      Consulting Physician

On September 25, 2006, Dr. E.B. Balinberg, a doctor of "internal medicine," examined Marrero.  (R. at 206-207.)  Dr. Balinberg performed a physical exam, and diagnosed Marrero with "left occipital neuralgia."  (R. at 207.)  Dr. Balinberg did not assess Marrero's RFC, but noted that Marrero's "physical examination was unremarkable except for the pain in the occipital area."  (Id.)

> c.      Testifying Medical Expert

Dr. Harlan Marcy Malik testified as an expert witness during the hearing before the ALJ. (R. at 426-30.)  Dr. Malik stated that in his opinion Marrero did not have a medically determinable physical impairment.  (R. at 426-27.)  Even though Marrero experiences "muscle aches and pains and some tenderness," (R. at 426), Dr. Malik did not believe that Marrero's pain "meets the requirements of severe," (R. at 428).  Dr. Malik did note that Marrero's pain may "limit her with some overhead reaching and the like."  (R. at 429.)  Although Dr. Malik stated

that "there does not seem to be any musculoskeletal or neurological or other types of underlying condition other than her emotion," he did not believe that Marrero's pain was psychogenic.  (Id.) Dr. Malik opined that the cause of Marrero's pains and limitations "are more based upon her physical habitus than anything else."  (R. at 428-29.)

## II.  DISCUSSION

### A.    Standard of Review

The Court's review of the Commissioner's decision is limited.  See Vieno v. Barnhart, 312 F.3d 578, 586 (2d Cir. 2002).  A court only sets aside the Commissioner's decision when based on legal error or not supported by substantial evidence in the record.  Acierno v. Barnhart, 475 F.3d 77, 80-81 (2d Cir. 2007), cert. denied, 551 U.S. 1132, 127 S. Ct. 2981, 168 L. Ed. 2d 704 (2007); Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999).  Furthermore, "[t]he findings of the commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."  42 U.S.C. § 405(g).  "Substantial evidence" is "defined as 'more than a mere scintilla.'  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Rosa, 168 F.3d at 77 (quoting Pratts v. Chater, 94 F.3d 34, 37 (2d Cir. 1996)); accord Burgess v. Astrue, 537 F.3d 117, 127 (2d Cir. 2008).

To determine whether substantial evidence supports the Commissioner's decision, "the Court carefully considers the whole record, examining evidence from both sides."  Tejada v. Apfel, 167 F.3d 770, 774 (2d Cir. 1999) (citing Quinones v. Carter, 117 F.3d 29, 33 (2d Cir. 1997)).  However, the Court cannot weigh medical evidence because conflicts of medical evidence are resolved by the Commissioner.  Veino, 312 F.2d at 588.  The Court  "must be careful not to 'substitute its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon de novo review.'"  Meija v. Astrue, No. 09 Civ.

9656, 2010 WL 2572006, at *6 (S.D.N.Y. June 28, 2010) (quoting Jones v. Sullivan, 949 F.2d

57, 59 (2d Cir. 1991) (additional quotation and citation omitted)); see also 42 U.S.C. § 405(g)

("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial

evidence, shall be conclusive").  However, the Court will not defer to the Commissioner's

decision if it is the "product of legal error."  Meija, 2010 WL 2572006, at *6 (quotations and

citations omitted).

Where, as here, the plaintiff is proceeding *pro se,* the submissions of the *pro se* litigant

"must be construed liberally and interpreted to raise the strongest arguments that they suggest."

Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 474 (2d Cir. 2006) (per curiam) (quotation

and citations omitted).  Accordingly, the two strongest arguments that Marrero raises are that the

Commissioner's decision was based on legal error, or that the Commissioner's decision was not

supported by substantial evidence.  Defendant denies both of these arguments.

Therefore, the two main issues before this Court are: (1) whether the Commissioner

committed legal error when he did not give controlling weight to Dr. Cohen's Psychiatric Report

and Limitations Form; and (2) whether substantial evidence in the record supports the

Commissioner's decision that Marrero is not entitled to SSI payments.

      B.        "Disability" for the Purposes of Disability Benefits

A claimant is disabled if she is unable "to engage in any substantial gainful activity by

reason of any medically determinable physical or mental impairment which . . . has lasted or can

be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 416(i)(1)

(2006).

The Commissioner has established a five-step sequential analysis to determine whether the claimant is disabled.  See 20 C.F.R. § 404.1520 (2009).  The United States Courts of Appeals for the Second Circuit has articulated that analysis as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.  If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities.  If the claimant suffers such impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations.  If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience . . . .  Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work.  Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Rosa, 168 F.2d at 77; see also Barnhart v. Thomas, 540 U.S. 20, 24-25, 124 S. Ct. 376, 157 L. Ed. 2d 333 (2003).  On the fifth step, there is a limited burden shift to the Commissioner to "show that there is work in the national economy that the claimant can do; [the Commissioner] need not provide additional evidence of the claimant's residual functional capacity."  Poupore v. Astrue, 566 F.3d 303, 306 (2d Cir. 2009) (per curiam).

      C.      The ALJ's Application of the Five-Step Sequence to Marrero's Claim[5]

In his written decision the ALJ followed the five-step analysis to determine whether Marrero is disabled and eligible for SSI.  First, the ALJ determined that Marrero is not currently engaged in substantial gainful activity and had not engaged in substantial gainful activity since she filed for SSI.  (R. at 26.)  Second, the ALJ concluded that Marrero has a "major depressive disorder with anxiety and somatic features."  (Id.)  The ALJ acknowledged that based on SSA regulations, this disorder was "severe."  (Id.); see also 20 C.F.R. § 416.920(c).

---

[5] Although the ALJ's decision became the final decision of the Commissioner, the ALJ performed the actual analysis under review.  Therefore, the remaining discussion will refer to the findings of the ALJ.

In the third step, the ALJ determined that even though Marrero has a medically-determinable impairment, it is not a listing-level impairment.  (R. at 26); see also 20 C.F.R. §§ 404.1520(d), 416.920(d).  To reach the conclusion that Marrero did not have a listing-level impairment, the ALJ relied on the findings of a consulting psychiatrist and two expert witnesses who testified during the July 31, 2007 hearing before the ALJ.  (R. at 24-25.)  Although Dr. Vitolo, a psychiatrist and expert witness, testified that the conclusions in Marrero's treating source reports—Dr. Cohen's Psychiatric Report and Limitations Form—would satisfy the requirements of a listing-level impairment and automatically qualify Marrero for SSI, (R. 432, 434), Dr. Vitolo did not believe that the reports' conclusions were supported by the evidence in the record, (R. at 25, 434).

The ALJ accepted Dr. Vitolo's conclusions and declined to award the reports of Dr. Cohen, the treating source, "special deference" because he questioned the credibility and provenance of the reports.  (R. at 24-25.)  Although both reports were in fact signed by Dr. Cohen, the ALJ recognized that Marrero had never been seen or actually treated by Dr. Cohen. (R. at 24, 413-14.)  In fact, the Psychiatric Report and Limitations Form were filled out entirely by Ixora Salazar, a "social worker therapist," not a medical doctor.  (R. at 23-24.)  Accordingly, the ALJ concluded that Dr. Cohen's reports did not represent Dr. Cohen's "independent findings or conclusions," but were merely a "'passing of the buck' to [Salazar] who would not herself qualify as a 'treating physician,'" (R. at 24, 25), and they did not merit the "special deference" typically awarded to the conclusions of treating physician, (R. at 24-25).  The ALJ took Dr. Cohen's "records themselves for what they showed," and weighed all the evidence to determine that Marrero did not have a listing-level impairment.  (R. at 26.)

In the fourth step, the ALJ was only required to define Marrero's RFC because Marrero "ha[d] no past relevant work."  (Id.)  SSA regulations define RFC as "the most you can still do despite your limitations."  20 C.F.R. § 404.1545(a)(1).  The ALJ found that Marrero was able "to engage in work activity that is simple, routine, low in stress and does not require significant overhead reaching."  (Id.)

In the fifth step, because Marrero did not have past relevant work, the burden shifted to the Commissioner to demonstrate the availability of work in the national economy that Marrero could perform.  The ALJ assessed Marrero's testimony regarding her limitations and inability to perform new tasks, but he did not take Marrero's "assertions entirely at face value because they do not fully comport with the written evidence."  (R. at 25.)  Instead, the ALJ acknowledged that Marrero performs "household chores for herself and her children," (R. at 22), and she "can and does travel by subway," (R. at 25).

The ALJ noted that Marrero has a "clearly 'severe' physical impairment," and he took into account the fact that Marrero may have "some limits on overhead reaching," consistent with the findings of Dr. Malik, a testifying medical expert.  (R. at 24.)  The ALJ found that given Marrero's "age, education, and work experience" she "could be expected to make a vocational adjustment to work that exists in significant numbers in the national economy."  (R. at 26.)

Based on the above findings, the ALJ determined that Marrero was not "disabled" and he denied Marrero SSI payments.  (Id.)

D.     The ALJ's Decision to Not Give Dr. Cohen's Psychiatric Report and
        Limitations Form Controlling Weight Does Not Constitute Legal Error

The "medical opinion" of a claimant's "treating source" is given "controlling weight" in the ALJ's analysis of the "nature and severity" of a claimant's impairment if the medical opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is

not inconsistent with other substantial evidence in [the] record."  20 C.F.R. § 404.1527(d)(2); see

Halloran v. Barnhart, 362 F.3d 28, 32 (2d Cir. 2004) (per curiam) (stating that the ALJ is not

required to award controlling weight to opinions of treating sources that "are not consistent with

other substantial evidence in the record such as the opinions of other medical experts"); see also

Green-Younger v. Barnhart, 335 F.3d 99, 106 (2d Cir. 2003).  However, the ALJ makes the

"ultimate finding" about whether a claimant is disabled.  Snell v. Apfel, 177 F.3d 128, 133 (2d

Cir. 1999).  Where the treating sources's opinion is not given controlling weight, the ALJ must

put forth "good reasons."  Halloran, 362 F.3d at 32-33.

Although the Second Circuit has not specifically addressed the question of whether

opinions by social workers or therapists are given controlling weight, the Second Circuit has held

that only "medical opinions" of a treating source merit "controlling weight."  Diaz v. Shalala, 59

F.3d 307, 313 (2d Cir. 1995).  According to Diaz v. Shalala, "'[m]edical opinions are statements

from physicians and psychologists or other *acceptable medical sources* that reflect judgments

about the nature and severity of [a claimant's] impairment(s) . . . .'"  Diaz v. Shalala, 59 F.3d at

313 (emphasis in original) (quoting 20 C.F.R. § 404.1527(a)(2)).  The SSA regulations list "five

categories of 'acceptable medical sources,'" id. (quoting 20 C.F.R. § 404.1513(a)), which

include "licensed physicians" or "licensed and certified psychologists," 20 C.F.R. §

404.1513(a)(1)-(2).  While the opinion of a chiropractor, for example, may assist the SSA to

determine the "nature and severity" of a claimant's impairment, 20 C.F.R. § 404.1513(d), it is

not an opinion that merits "controlling weight" in the ALJ's analysis because it is not a "medical

opinion" according to SSA regulations, Diaz, 59 F.3d at 313.

In his decision to deny Marrero SSI, the ALJ did not give "controlling weight" to

Marrero's treating psychiatric reports because they were completed by Ixora Salazar, a "social

worker therapist," (R. at 23), and they did not represent the "independent findings or conclusions" of a medical professional, (R. at 23-25). Because social workers and therapists are not included in the definition of "acceptable medical sources," 20 C.F.R. § 404.1513(a), therefore, social workers and therapists do not give "medical opinions," and the ALJ did not err in denying the Psychiatric Report and Limitations Form the controlling weight awarded to treating sources.  See Diaz, 59 F.3d at 313.

If the ALJ refuses to give the treating physician's opinion controlling weight, the ALJ must consider the following factors to determine how much weight to give the opinion: "(i) the frequency of examination and the length, nature, and extent of the treatment relationship; (ii) the evidence in support of the opinion; (iii) the opinion's consistency with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other relevant factors."  Schaal v. Apfel, 134 F.3d 496, 503-04 (2d Cir. 1998); see also 20 C.F.R. § 404.1527(d)(2).

Dr. Vitolo noted that the conclusions in the Psychiatric Report and Limitations Form would support a finding that Marrero had a listing-level impairment.  (R. at 434.)  However, no other physician or psychiatrist came to this conclusion.  Where the Psychiatric Report and Limitations Form concluded that Marrero's limitations were "marked" and "extreme," (R. at 385, 387, 389, 390), the other medical opinions found that Marrero's limitations were at most mild or moderate, (R. at 209, 224, 301, 307, 371, 426-27, 430).  Even though Salazar, who completed Dr. Cohen's reports, had seen Marrero for the longest period of time, her opinions did not represent "medical opinions," and, therefore, did not deserve controlling weight.  The reports also significantly conflicted with the medical opinions of the other treating physicians, the consulting psychiatrist, and the testifying medical experts.

The ALJ gave the conclusions in Dr. Cohen's report sufficient weight, and, therefore, the ALJ did not commit legal error when he determined that Marrero was not disabled and not eligible for SSI.

E.      Substantial Evidence Supports the Denial of SSI

1.   *The ALJ's Duty to Develop the Record*

Because a hearing before the ALJ is non-adversarial, Perez v. Chater, 77 F.3d 41, 47 (2d Cir. 1996) (citing Echevarria v. Sec'y of Health & Human Servs., 685 F.2d 751, 755 (2d Cir. 1982)), the ALJ has an affirmative obligation to develop "the administrative record" before making a disability determination, Corcoran v. Astrue, No. 04cv946, 2009 WL 189870, at *3 (D. Conn. Jan. 26, 2009) (quoting Perez, 77 F.3d at 47); see also 20 C.F. R. § 404.1512(d)-(f).[6]  A claimant is entitled to a full hearing before the ALJ, Corcoran, 2009 WL 189870, at *3 (citing Echevarria, 685 F.2d at 755), and SSA regulations state that a "complete medical history" must be provided "before we make a determination that you are not disabled," 20 C.F.R. § 404.1512(d).

The ALJ fulfilled his duty to develop the administrative record.  The hearing transcript shows that Heaton, the paralegal, questioned Marrero in detail regarding her depression, anxiety, and sleep disturbances.  (R. at 419-20.)  The transcript also reflects Marrero's testimony regarding the side effects she experienced from her medications.  (R. at 420-422.)  The ALJ himself sought clarity about Marrero's employment history, and to establish whether a psychiatrist actually saw Marrero.  (R. at 413-415, 416-18.)  The ALJ further questioned Marrero regarding her education, the effect of her mental health treatment, her daily activities, her

---

[6] "This duty exists regardless of whether the claimant is represented by counsel, or, as here, by a paralegal." Perez, 77 F.3d at 47.  In Marrero's hearing before the ALJ, she was represented by Betty Heaton, a paralegal at Manhattan Legal Services.  (R. at 21.)

physical activities, and her social activities.  (R. at 423-26.)  Three expert witnesses also testified during the hearing: Dr. Malik testified about Marrero's physical health, Dr. Vitolo testified about Marrero's mental health, and Dr. Feinstein testified about Marrero's vocational opportunities. (R. at 426-40.)

The written evidence contained several hundred pages of Marrero's medical records and medical reports from treating sources, two consulting psychiatrists, and one consulting physician. (R. at 90-408.)  Because the ALJ examined the records from Marrero's treating sources, the reports from the consulting sources, the testimony of the expert witnesses, and Marrero's subjective testimony to find that Marrero was not disabled and not eligible for SSI, (R. at 22-25), the ALJ fulfilled his duty to develop the record and he provided Marrero with a full hearing before he determined that she was not disabled.  See Corcoran, 2009 WL 189870 at *3.

### 2.    The ALJ's Credibility Assessment of Marrero's Testimony

It is the function of the ALJ to "resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant."  Carroll v. Sec'y of Health & Human Servs., 705 F.2d 638, 642 (2d Cir. 1983).  If the claimant's testimony contradicts the record, the ALJ is "entitled to find [her] not credible."  Rutkowski v. Astrue, 368 Fed. App'x 226, 230 (2d Cir. 2010) (citing Aponte v. Sec'y, Dep't of Health & Human Servs., 728 F.2d 588, 591-92 (2d Cir. 1984)).  The ALJ's determination, including the rejection of the claimant's testimony, must be upheld, "[i]f the [ALJ's] findings are supported by substantial evidence."  Aponte v. Sec'y, Dep't of Health & Human Servs., 728 F.2d 588, 591 (2d Cir. 1984).

The ALJ found that  Marrero's subjective statements about her limited ability to function are "not totally credible."  (R. at 26.)  He acknowledged that Marrero complains of pain, (R. at 22, 24), but also that she "manages a household for herself and her children . . . . [s]he can and

does travel by subway . . . . [and] [s]he socializes with a female friend and sister," (R. at 25).

The ALJ took into account the fact that Marrero suffers from a "major depressive disorder with

anxiety and somatic features [that] is considered 'severe'" under SSA regulations.  (R. at 24, 26);

see also 20 C.F.R. § 416.920(c).

The ALJ did not accept Marrero's testimony "entirely at face value because [it] did not

fully comport with the written record."  (R. at 25.)  The ALJ found "it significant that no medical

source – treating or otherwise – has felt that Ms. Marrero has an identifiable medically-

determinable physical impairment that would significantly impact her ability to function."  (R. at

24.)  Dr. Meadow and Dr. Vitolo each concluded that Marrero suffered from depression which

limited her activity, but the extent of her limitation was not marked or extreme.  (R. at 209, 429,

430.)

In light of the written evidence, the reports of a consulting physician, the report of a

consulting psychiatrist, and the testimony of an expert witness, the ALJ decided not to give

controlling weight to Marrero's testimony regarding her limitations.

After reviewing the record, this Court finds that the Commissioner properly denied

Marrero SSI based on an examination of the entire record and relevant facts.  Substantial

evidence supports the ALJ's finding that Marrero was in fact capable of performing work at the

light and sedentary levels, and the ALJ properly applied governing law in denying SSI payments.

**III.    CONCLUSION**

Defendant's motion for judgment on the pleadings is granted because the

Commissioner's decision was not based on legal error and was supported by substantial

evidence. The final determination of the Commissioner is affirmed. The Clerk of the Court shall enter judgment accordingly and close this case.

Dated: New York, New York
September 27, 2010

SO ORDERED:

Sidney H. Stein, U.S.D.J.